United States District Court
Eastern District of Michigan
Southern Division

United States of America,

    Plaintiff,

v.

Lee James Mouat,

    Defendant.

_____/

Hon. Stephen J. Murphy, III

Case No. 21-cr-20102

## United States' Sentencing Memorandum

The United States of America hereby files this memorandum in aid of sentencing.

### I.    FACTUAL BACKGROUND

On February 10, 2021, a federal grand jury returned a two-count indictment charging defendant Lee James Mouat with two counts of violating 18 U.S.C. § 249. On March 4, 2021, Mouat pleaded guilty to Count One of the Indictment; in exchange, the government moves to dismiss Count Two.

On June 6, 2020, teenaged victims D.F. and T.G. were spending the afternoon at Lake Erie's Sterling State Park at the same time the

defendant, Lee Mouat, was spending the afternoon there with his family. Mouat, who was then 42 years old, 6'6", and approximately 240 pounds, had been drinking and was intoxicated as he and his family walked back to the parking lot to go home. At the same time, D.F., T.G., and a third Black teenager were walking to the parking lot to retrieve a portable speaker. Mouat and the three teens did not know each other and had never previously interacted.

On the way to the parking lot, Mouat, referring to D.F. and his friends, complained that the "n***ers" were playing "ghetto music." Mouat announced that he would smash a cooler over the teenagers' heads if they said anything to him, and also announced that he wanted to get into a fight.

In the parking lot, D.F. stopped to chat with his cousin, who was seated inside a car. Meanwhile, Mouat began yelling directly at D.F.'s friends, calling them "n***ers" and telling them that "Black Lives Don't Matter," "N***ers don't belong at this beach," and "This is my beach, n***er." D.F.'s cousin told Mouat to stop cursing and using "that word."

Mouat apologized and walked to his vehicle while stating, "I've got something for you!" He retrieved a heavy, metal bike lock and walked back to where D.F. had rejoined his friends in the parking lot. *See* Figure 1.



*Figure 1*

Mouat then struck D.F. in the face with the bike lock, fracturing D.F.'s jaw, knocking out three of his teeth, and lacerating his face and mouth. One of Mouat's daughters intervened and attempted to stop Mouat, but he pushed her away. Mouat kicked or struck D.F. in the face a second time before D.F. lost consciousness.

Mouat also swung the bike lock at T.G., but missed. Mouat continued to wield the lock and walk toward T.G., taunting him, "come here, n***er."

A bystander and D.F.'s daughter called 911. When responding officers arrived, they observed severe trauma to D.F.'s face and mouth and noticed that D.F. lost consciousness several times. On one occasion, an officer administered a sternum rub to bring D.F. back to consciousness. Meanwhile, Mouat repeatedly refused to comply with officers' commands to lie down on the ground, and continued to argue with others in the parking lot, complying only when an officer pointed a taser at him and ordered him for the third time to lie on the ground.

An ambulance arrived and transported D.F. to the hospital, where he received treatment for a fractured jaw, a 2-centimeter "through and through" laceration to his upper lip, and the loss of three of his teeth. The injuries that Mouat caused required D.F. to undergo dental reconstruction surgery. *See* Figure 2.



*Figure 2*

Mouat took the above actions because of D.F.'s and T.G.'s race—that is, Mouat willfully caused bodily injury to D.F., and attempted to cause bodily injury to T.G., because they are Black.

## II. PLEA AGREEMENT AND PRE-SENTENCE REPORT

In the plea agreement, the parties stipulated that the applicable offense level for Count One is 23. The parties agreed that the base offense level is 14 (the base offense level for aggravated assault). The parties then stipulated that a 4-level upward adjustment applied pursuant to § 2A2.2(b)(2)(B) because a dangerous weapon was used, a 5-level upward adjustment applied pursuant to § A2.2(b)(3)(B) because the victim sustained serious bodily injury, and a 3-level upward

adjustment applied pursuant to § 3A1.1(a) because the defendant intentionally selected the victim because of the actual or perceived race or color of the victim or any person. The parties also stipulated that, based on his acceptance of responsibility, the defendant is eligible for a 3-level reduction pursuant to § 3E1.1. Under the agreement, the parties acknowledge that the Court is not bound by these stipulations.

Consistent with the plea agreement, the Pre-Sentence Report (PSR) calculates that the defendant's offense level is 23, and finds that the defendant has a criminal history category of II. *See* PSR ¶¶ 29, 35. The PSR identified no factors that would warrant a departure from the applicable sentencing guideline range. *See* PSR ¶¶ 67, 78.

### III. SENTENCING RECOMMENDATION

When fashioning an appropriate sentence for a defendant, a court must first consider the applicable Guidelines range under 18 U.S.C. § 3553(a). *See United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). Although the sentencing guidelines are advisory, they are the "starting point and the initial benchmark" for federal sentencing. *Id.* at 579 (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007). Once a court has

determined the appropriate sentencing range, it should then consider that range in light of the other relevant § 3553(a) factors. *Id.*

As calculated in the PSR and stipulated to in the plea agreement, the defendant's offense level is 23. An offense level of 23 and a criminal history category of II yields a Guidelines range of 51 to 63 months.

After determining the applicable Guidelines range, the court must consider the sentencing factors enumerated in 18 U.S.C. § 3553(a). Section 3553 requires the court to consider the need for the sentence imposed to accomplish certain purposes, including to: 1) reflect the seriousness of the offense; 2) promote respect for the law; 3) provide just punishment for the offense; 4) afford adequate deterrence to criminal conduct; 5) protect the public from further crimes of the defendant; and 6) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. § 3553(a)(2). Section 3553(a) also requires the court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, and then impose a sentence sufficient to comply with the purposes outlined in the provision.

A within-Guidelines prison sentence is necessary to account for the seriousness of the conduct at issue here: the brutal attack of a high school student, just days before his graduation, because of his race. D.F. and T.G., who were trying to enjoy the day at a state park, posed no threat to defendant Mouat. Indeed, it was Mouat who initiated the encounter with the teens by shouting racial slurs at them. Following the verbal attack, Mouat removed himself from the interaction to return to his vehicle, but rather than leaving, he retrieved a dangerous weapon. Mouat was not deterred in his attack, despite the intervention of those around him. D.F.'s cousin told Mouat to stop cursing and using the n-word at teens; instead, Mouat retrieved a heavy, metal bike lock to beat the teens. As captured on a bystander cell-phone recording, Mouat's own daughter stepped between Mouat and the teens, trying to protect the teens and to stop her father; undaunted, Mouat pushed her away and continued his attack. Because of Mouat's assault, a day at the park resulted in D.F.'s suffering from a fractured jaw and lacerated lip, losing several teeth, and requiring dental reconstruction surgery.

Mouat's attack is all the more serious because he was motivated by racial bias. No high school student—indeed, no adult—should be

physically attacked because of their race by a person wielding a metal bike lock and hurling hate-filled slurs. D.F. and T.G. were attacked because they have Black skin and were enjoying a state park, and Mouat believed that "n***ers don't belong at this beach" and that "Black Lives Don't Matter." A bias-motivated crime such as this one devastates not only the victim who suffered physical injury, but it also victimizes entire families and communities by instilling fear that they too could be targeted because of the color of their skin. Mouat's sentence should reflect the seriousness of his bias-motivated offense.

A within-Guidelines prison sentence is also necessary to promote respect for the law and to provide just punishment for the offense. A deviation from the Guidelines would send the message that a violent attack motivated by racial bias is not deserving of the sanction that Congress and the Sentencing Commission have deemed to be just punishment based on the federal courts' collective sentencing expertise accumulated over the decades. For similar reasons, a variance would not afford adequate deterrence of future similar conduct.

The PSR and Mouat's record underscores that his conduct here was not an aberration and that a Guidelines sentence is needed to

protect the public and deter him from future violence against others. He has apparently long been prone to acting violently and aggressively. *See* PSR ¶¶ 33-34, 84. In 2011, Mouat was convicted of carrying a concealed weapon and aggravated menacing. *See* PSR ¶ 33. In that case, he had a verbal altercation with a neighbor. Similar to this case, Mouat could not control his anger by choosing to walk away. Instead, he went home, retrieved his gun, returned to confront the neighbor, and fired two shots into the air. *Id.* Mouat received a deferred custodial sentence and three years' probation but violated the terms of his probation. *Id.* In 2017, Mouat was convicted of domestic violence after punching his girlfriend in the head. *See* PSR ¶ 34.

Mouat has also demonstrated racial bias in the past; for example, his daughter informed investigators that Mouat did not approve of her having a baby with a Black man, scolding her, "Why are you a n***er lover," and telling her that he hopes her child "doesn't get skin color." No downward variance is warranted.

## IV. CONCLUSION

For the reasons set forth above, the United States requests that the defendant be sentenced to the midpoint of the defendant's Guideline

range as determined by the Court, and three years of supervised release.

Respectfully submitted,

Saima S. Mohsin
Acting United States Attorney

Tara Allison
Trial Attorney
USDOJ – Civil Rights Division

*/s/ Frances Lee Carlson*
Frances Lee Carlson (P62624)
Assistant United States Attorney
United States Attorney's Office
211 W. Fort St., Ste. 2001
Detroit, Michigan  48226
(313) 226-9696
frances.carlson@usdoj.gov

Date:  July 2, 2021

## Certificate of Service

I hereby certify that on Friday, July 2, 2021, I electronically filed the foregoing <u>United States' Sentencing Memorandum</u> with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record, including to Stacey M. Studnicki, counsel for the defendant.

*/s/ Frances Lee Carlson*
Frances Lee Carlson (P62624)
Assistant United States Attorney
United States Attorney's Office
211 W. Fort St., Ste. 2001
Detroit, Michigan  48226
(313) 226-9696
frances.carlson@usdoj.gov